**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION**

**IN RE:**

| | |
|---|---|
| **Richard A. Curro** | **Case No.: 14-13526-amc** |
| **and** | |
| **Jamie L. Curro** | **Chapter 13** |

     **Debtor(s),**
_____/

## <u>MOTION TO ALLOW LATE FILED PROOF OF CLAIM</u>

     Nationstar Mortgage LLC (hereinafter referred to as "Secured Creditor"), by and through

undersigned counsel, files this *Motion to Allow Late Filed Proof of Claim*, requesting that this

Court enter an Order pursuant to 11 U.S.C. § 105, and in support thereof states as follows:

1.  This Court has jurisdiction over the matters contained herein pursuant to 28 U.S.C. §§157
    and 1334.  This matter is a core proceeding under 28 U.S.C. §157(b)(2).  Venue is proper
    in the United States Bankruptcy Court for the Eastern District of Pennsylvania pursuant
    to 28 U.S.C. §§ 1408 and 1409.

2.  Section 105 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended,
    "<u>Bankruptcy Code</u>"), and Federal Rule of Bankruptcy Procedure 9006(b) relating to
    motions for enlargement of time after the expiration of a specified period, serve as the
    statutory bases for the relief requested in this Motion.

## <u>FACTUAL BACKGROUND</u>

3.  Richard A. Curro and Jamie L. Curro (hereinafter the "Debtors") filed a voluntary
    petition for relief under chapter 13 of the Bankruptcy Code on May 1, 2015 (hereinafter
    the "Petition Date").

4.   William C. Miller, Esquire ("Chapter 13 Trustee") is the standing Chapter 13 Trustee over the Debtors' bankruptcy case.

5.   The Debtors entered into certain Loan and Security Agreements with Secured Creditor's predecessor, American Brokers Conduit on March 23, 2007, wherein a loan in the amount of $150,000.0 was secured against the Debtors' real property located at 2822 S. Alder Street, Philadelphia, PA 19148.  A copy of the Note and Mortgage, along with the proposed proof of claim and relevant assignments of mortgage are included as **Exhibit A** with this Motion.

6.   Thereafter, on May 10, 2007, American Brokers Conduit transferred its interest in the collateral to Homeward Residential, Inc.

7.   On January 30, 2017, Homeward Residential Inc. transferred its interest to Secured Creditor, Nationstar Mortgage, LLC.

8.   Due to an unfortunate oversight by predecessors in interest to the Secured Creditor, a Proof of Claim was not filed prior to the Claims Bar Date on 11/04/2014.

## **RELIEF REQUESTED**

9.   Nationstar Mortgage, LLC respectfully requests that this Court grant Nationstar leave of court to file its proof of claim against the Debtors.

10. Federal Rule of Bankruptcy Procedure 9006(b)(1) governs the grant or denial of motions for enlargement of time made after the expiration of the specified period during which the act was required to be done.

11. Specifically, Bankruptcy Rule 9006(b)(1) provides,

> …[W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion . . . (2) on motion made after the expiration of the period specified permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b).

12. With respect to Bankruptcy Rule 9006(b), the Supreme Court in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. P'ship ("In re Pioneer")*, 507 U.S. 380, 388 (1993), stated:

> [B]y empowering the courts to accept late filings 'where the failure to act was the result of excusable neglect,' Rule 9006(b)1), Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.

13. The Supreme Court set forth the applicable standard for allowing the claims bar deadline to be extended at the request of a creditor, which requires consideration of all relevant circumstances surrounding the party's omission, including "the danger of prejudice to the debtor, the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the Movant, and whether the Movant acted in good faith." *In re Pioneer*, 507 U.S. at 395; *see also Global Indus. Technology, Inc., v. Ash Trucking Co., Inc.*, 375 B.R. 155 (Bankr.W.D.Pa.2007).

<u>I.</u>    <u>Prejudice to the Debtor</u>

14. The Debtors' will suffer no prejudice if this Honorable Court grants Nationstar leave to file its proof of claim.

15. The Debtors' confirmed plan states that the loan secured against the Property will be paid directly to the Secured Creditor outside the plan.

16. Absent some other factor unrelated to Nationstar filing its claim, granting Nationstar leave to file its proof of claim, alone, will not force the Debtor to contribute additional funds to her Chapter 13 Plan.  Thus, there is no prejudice to the Debtor.

17. Nationstar also believes that the interests of equity outweigh any perceived prejudice to other unsecured creditors, as courts have recognized that there is no prejudice when all parties can be placed in the same situation they would have been if the error had not occurred.  *See also In re Brown*, 159 B.R. 710, 716 (Bankr. D.N.J. 1993; *In re McLaughlin*, 157 B.R. 873, 877 (Bankr. N.D. Iowa 1993) ("[T]he loss of a dividend by the creditors would not be prejudice.  The court does not consider other creditors' receipt of lower dividends or no dividends as prejudice if this result is warranted by the facts and law.")

18. Thus, Nationstar believes that this Honorable Court can grant Nationstar leave to files its proof of claim without any prejudice to the Debtor or other creditors.

II.    Good Faith

19. Nationstar has acted in good faith in requesting the relief stated in this Motion.

20. Based on the Debtor's schedules, there is no dispute that Nationstar has a secured claim against the Debtor.

21. The undersigned seeks the relief requested in this Motion in a good faith effort to remedy an administrative oversight that, through no fault of Nationstar, operates to prejudice Nationstar's rights its secured interest in the Property.

WHEREFORE, Nationstar Mortgage, LLC respectfully requests that this Honorable Court grant leave to file a secured claim in the above-captioned bankruptcy estate, in the form attached as **Exhibit A** to this motion.

By: /s/ Kevin Buttery
Kevin M. Buttery, Esquire
State Bar No. 319438

ROBERTSON, ANSCHUTZ & SCHNEID, PL
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241-1969
Email: kbuttery@rascrane.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with

the Clerk of Court using the CM/ECF system on this 26th day of October, 2017. I also certify that

the foregoing *Motion to Allow Late Filed Proof of Claim* was served on this day by United States

Mail, Electronic Mail, or via the CM/ECF system to the parties on the service list stated below:

Richard A. Curro
and
Jamie L. Curro
2707 S. 13th Street
Philadelphia, PA 19148

Michael A. Cataldo
Cibik & Cataldo, P.C.
1500 Walnut Street
Suite 900
Philadelphia, PA 19102

William C. Miller
Chapter 13 Trustee
1234 Market Street
Suite 1813
Philadelphia, PA 19107

United States Trustee
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107

By: /s/ Kevin Buttery
Kevin M. Buttery, Esquire
State Bar No. 319438

ROBERTSON, ANSCHUTZ & SCHNEID, PL
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Tel: (561) 241-6901
Fax: (561) 241-1969
Email: kbuttery@rascrane.com

# EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1  Richard A. Curro

Debtor 2  Jamie L. Curro
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of PENNSYLVANIA

Case number 14-13526-AMC

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form.** Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. | What is the current creditor? | NATIONSTAR MORTGAGE LLC |
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor |

| 2. | Has this claim been acquired from someone else | [ ] No |
| | | [ ] Yes.  From whom? |

3. **Where should notices and payments to the creditor be sent?** Federal Rule of Bankruptcy Procedure (FRBP) 2002 (g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Nationstar Mortgage LLC<br>Name | Nationstar Mortgage LLC<br>Name |
| PO BOX 619096<br>Number        Street | PO BOX 619094<br>Number        Street |
| Dallas,        TX        75261-9741<br>City        State        ZIP Code | Dallas,        TX        75261-9741<br>City        State        ZIP Code |
| Contact phone 877-343-5602 | Contact phone  877-343-5602 |
| Contact email | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

| 4. | Does this claim amend one already filed? | [X] No<br>[ ] Yes.   Claim number on court claim registry (if known) _____ | Filed on _____<br>MM/DD/YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | [X] No<br>[ ] Yes.   Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
| --- | --- |

| 6. | **Do you have any number you use to identify the debtor** | [ ] No<br>[X] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>6366</u> |
| --- | --- | --- |

| 7. | **How much is the claim?** | $ <u>141,691.82</u> | **Does this amount include interest or other charges?**<br>[X] No<br>[ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(a) |
| --- | --- | --- | --- |

| 8. | **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>   <u>MONEY LOANED</u> |
| --- | --- | --- |

| 9. | **Is all or part of the claim secured?** | [ ] No<br>[X] Yes   The claim is secured by a lien on property.<br><br>**Nature of property:**<br><br>[X] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim*<br>       *Attachment* (Official Form 410-A) with this Proof of Claim.<br><br>[ ]     Motor vehicle<br>[ ]     Other. Describe:   <u>2822 S Alder St. Philadelphia PA 19148</u><br><br>**Basis for perfection:**   <u>Mortgage/Deed of Trust</u><br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**             $<br><br>**Amount of the claim that is secured:**   $ <u>141,691.82</u><br><br>**Amount of the claim that is unsecured:** $<u>        </u>  (The sum of the secured and unsecured amounts should match the amount in line 7)<br><br>**Amount necessary to cure any default as of the date of the petition:**   <u>$0.00</u><br><br>**Annual Interest Rate** (when case was filed)<u>4.0000</u>%<br><br>[ X ]    Fixed<br>[ ]     Variable |
| --- | --- | --- |

| 10. | **Is this claim based on a lease?** | [X]   No<br>[ ]   Yes. **Amount necessary to cure any default as of the date of the petition.**   $<u>        </u> |
| --- | --- | --- |

| 11. | **Does this claim involve a right to setoff?** | [X]   No<br>[ ]   Yes. Identify the property <u>                </u> |
| --- | --- | --- |

| 12. | **Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority | [X]  No [ ]  Yes. *Check one:* | **Amount entitled to priority** |
|---|---|---|---|
| | | [ ] Domestic support obligations (including alimony and child support) under 11  U.S.C. §507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | [ ] Up to $2,850* of deposits toward purchase, lease or rental of property or services for personal, family, or household use. 11 U.S.C. §507(a)(7). | $_____ |
| | | [ ] Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. §507(a)(4). | $_____ |
| | | [ ] Taxes or penalties owed to governmental units. 11 U.S.C. §507(a)(8). | $_____ |
| | | [ ] Contributions to an employee benefit plan.11 U.S.C. §507(a)(5). | $_____ |
| | | [ ] Other. Specify subsection of 11 U.S.C. §507(a)(___) that applies. | $_____ |
| | | * Amount are subject to adjustment on 4/1/19 and every 3 years after that for cases begun on or after the date of adjustment | |

---

**Part 3:**    Sign Below

| **The person completing this proof of claim must sign and date it. FRBP 9011(b).** If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is. **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box* [ ]    I am the creditor. [X]    I am the creditor's attorney or authorized agent. [ ]    I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. [ ]    I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3004. I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculation the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. I declare under penalty of perjury that the foregoing is true and correct. Executed on date  {SENDMONTH} {SENDDAY}, {SENDYEAR}        MM/DD/YYYY /s/ {ATTYNAME}      Signature **Print the name of the person who is completing and signing this claim:** **{ATTYNAME}** Authorized Agent for Secured Creditor Robertson, Anschutz, & Schneid PL 6409 Congress Ave., Suite 100 Boca Raton, FL, 33487 561-241-6901                    bkyecf@rasflaw.com |
|---|---|

Nationstar Mortgage services the loan on the property referenced in this proof of claim.    In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of **Nationstar Mortgage LLC,** "Noteholder".

Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number | 14-13526-AMC | Principal balance: | $ 141,691.82 | Principal & interest due: | $0.00 | Principal & interest: | $595.74 |
| Debtor 1: | Richard A. Curro | Interest due: | $0.00 | Prepetition fees due: | $0.00 | Monthly escrow: | $234.41 |
| Debtor 2: | Jamie L. Curro | Fees, costs due: | $0.00 | Escrow deficiency for funds advanced: | $0.00 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 6366 | Escrow deficiency for funds advanced: | $0.00 | Projected escrow shortage: | $0.00 | Other: | $0.00 |
| Creditor: | NATIONSTAR MORTGAGE LLC | Less total funds on hand: | $0.00 | Less funds on hand: | $0.00 | Total monthly payment: | $830.15 |
| Servicer: | NATIONSTAR MORTGAGE LLC | Other: | $0.00 | Total prepetition arrearage: | $0.00 | | |
| Fixed accrual/daily simple interest/other: | Fixed | Total debt: | $141,691.82 | | | | |

| Part 5: Loan payment History from First Date of Default |
|---|

# NOTE

March 23, 2007                    HUNTINGDON VALLEY                    Pennsylvania
    [Date]                                              [City]                                              [State]

2822 S ALDER STREET, Philadelphia, PA  19148
              [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 150,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on   May 1, 2007          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   April 1, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     PO Box 660029, Dallas, TX  75266-0029
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 985.39          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

DOC  #:316691
MULTISTATE FIXED RATE NOTE-Single  Family- Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT
       UM31 0005
-5N (0005)                    Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3                    Initials:

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

DOC  #:316692

Form 3200 1/01

_-5N  (0005)                                                        Initials: _____

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Jamie Curro_ _____ (Seal)    _____ (Seal)
JAMIE CURRO                      -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                -Borrower

_____ (Seal)    _____ (Seal)
                                 -Borrower                                -Borrower

*[Sign Original Only]*

DOC  #:316693
VMP -SN  (0005)                    Page 3 of 3                         Form 3200 1/01

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY: AMERICAN BROKERS CONDUIT

RYAN GRISCIONE
ASST. SECRETARY



Record & Return To:
**Security** Search and Abstract Co. In
926 Pine Street
Philadelphia, PA 19107

American Abstract & Search Inc.
2773-2775 Philmont Avenue
Huntingdon Valley, PA  19006

Prepared By:
angela schell
538 Broadhollow Road
4th Floor W
Melville, NY 11747
(877) 227-0400
Return To:
American Brokers Conduit
4650 Regent Blvd., Suite 100
Irving, TX 75063-2250
(816)949-3900

**Page: 1 of 17**
05/10/2007 06:31PM

This Document Recorded
05/10/2007
06:31PM
Doc Code: M      Commissioner of Records, City of Philadelphia

Doc Id: 51691272
Receipt #: 599544
Rec Fee: 126.50

Parcel Number: ███████      Premises:

──────────── [Space Above This Line For Recording Data] ────────────

# MORTGAGE

MIN ████████████

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated March 23, 2007 together with all Riders to this document.

**(B) "Borrower"** is JAMIE CURRO *and Richard Curro*

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint MI 48501-2026, tel. (888) 679-MERS.

DOC #:324241      APPL ███████████

PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

●-6A(PA) (0502)      Form 3039 1/01
UM31 9912      Initials:
Page 1 of 16
VMP Mortgage Solutions, Inc. (800)521-7291

*Page 1*

**(D) "Lender"** is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of  State of New York
Lender's address is  538 Broadhollow Road, Melville, NY  11747

**(E) "Note"** means the promissory note signed by Borrower and dated  March 23, 2007
The Note states that Borrower owes Lender  One Hundred Fifty Thousand and No/100
                                                                                                    Dollars
(U.S. $ 150,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   April 1, 2037                            .

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324242

VMP®-6A(PA)  (0502)                         ▬▬▬▬▬            Page 2 of 16            Initials:            Form 3039  1/01

Page 2

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the   County        [Type of Recording Jurisdiction]
of Philadelphia                                          [Name of Recording Jurisdiction]:
PLEASE SEE ATTACHED LEGAL DESCRIPTION

which currently has the address of     2822 S ALDER STREET

                                                                                   [Street]
Philadelphia                              [City], Pennsylvania 19148        [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

DOC  #:324243                    APPL #:0001660546

VMP-6A(PA) (0502)                        Page 3 of 16              Initials:           Form 3039  1/01

Page 3

# *The Talon Group*

## *A Division of First American Title Insurance Company*

Commitment No. ▮▮▮▮▮▮

### SCHEDULE C

### LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the West side of Alder Street at the distance of one hundred and ninety-eight feet six inches Southward from the South side of Johnston Street in the Thirty-ninth Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Alder Street fourteen feet three inches and extending of that width in length or depth Westward between parallel lines at right angles to the said Alder Street sixty feet to the middle of a certain three feet wide alley leading Southward into Bigler Street and Northward into another three feet wide alley leading Eastward into Alder Street.

TOGETHER WITH the free and common use, right, liberty and privilege of the aforesaid alleys as and for passageways and watercourses at all times hereafter, forever.

BEING 2822 South Alder Street.

PROPERTY PARCEL/BRT NO: ▮▮▮▮▮▮

**BEING the same premises which JAMIE BURRIS-TRAVELINA, by Indenture dated 07-31-06 and recorded 09-20-06 in the Office of the Recorder of Deeds in and for the County of Philadelphia in Document No. 51533995, granted and conveyed unto RICHARD CURRO and JAMIE CURRO, Husband and Wife, in fee.**

PA-3

*Page 4*

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

DOC #:324244

-6A(PA) (0502)   Page 4 of 16   Initials: AC   Form 3039   1/01

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the

Page 6

Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

DOC #:324246

-6A(PA) (0502)
®

~~Page 6 of 16~~

Initials:

Form 3039  1/01

Page 7

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

DOC #:324247

-6A(PA) (0502)   ~~Page 7 of 16~~      Initials: _____   Form 3039  1/01

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

DOC #:324248

-6A(PA) (0502)

~~Page 8 of 16~~

Initials:

Form 3039  1/01

Page 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

DOC #:324249

VMP -6A(PA) (0502)        Page 9 of 16        Initials:        Form 3039 1/01

Page 10

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

DOC #:324250

-6A(PA) (0502)

~~Page 10 of 16~~

Initials

Form 3039 1/01

*Page 11*

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

DOC #:324251

-6A(PA) (0502)          Page 11 of 16          Form 3039  1/01

Initials:

Page 12

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all

DOC #:324252

-6A(PA) (0502)

~~Page 13 of 16~~

Initials:

Form 3039  1/01

*Page 13*

expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

DOC #:324253

VMP®-6A(PA) (0502)    Page 13 of 16

Initials:

Form 3039  1/01

*Page 14*

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

DOC #:324254

-6A(PA) (0502)

Page 14 of 16

Initials:

Form 3039  1/01

Page 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                           JAMIE CURRO                -Borrower

_____          _____ (Seal)
                                           Richard Corro              -Borrower

_____ (Seal)       _____ (Seal)
                  -Borrower                                  -Borrower

_____ (Seal)       _____ (Seal)
                  -Borrower                                  -Borrower

_____ (Seal)       _____ (Seal)
                  -Borrower                                  -Borrower

DOC #:324255

VMP-6A(PA) (0502)            Page 15 of 16            Form 3039 1/01

Page 16

COMMONWEALTH OF PENNSYLVANIA, *Montgomery*                    County ss:

On this, the    23rd         day of   March, 2007                    , before me, the
undersigned officer, personally appeared   JAMIE CURRO *and Richard Curro*

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:
*09/02/10*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ROSE M. GABER, Notary Public
Lower Moreland Twp., Montgomery County
My Commission Expires September 2, 2010

_____
Title of Officer

**Certificate of Residence**
I,   *Rose M. Gaber*                              , do hereby certify that
the correct address of the within-named Mortgagee is P.O. Box 13916, Durham, NC 27709.

Witness my hand this    23rd              day of    March, 2007                .

_____
Agent of Mortgagee

DOC  #:324256

-6A(PA)  (0502)                    ~~Page 16 of 16~~         Initials:                    Form 3039  1/01

*Page 17*

Copy

Identifier: ███████        Doc Type:LMOD



Ocwen Loan Servicing, LLC
PO Box 780
Waterloo, IA 50704-0780
HELPING HOMEOWNERS IS WHAT WE DO! ™
OCWEN.MORTGAGEBANKSITE.COM

O C W E N

October 14, 2013

JAMIE CURRO                          RE: Account Number  ██████
2707 S 13TH ST                       Property Address 2822 S ALDER ST
PHILADELPHIA, PA 19148                                 PHILADELPHIA, PA 19148

Dear JAMIE CURRO

**Congratulations!  Your request for a loan modification has been approved subject to the following:**
-Receipt of $0.00 (for items owed that cannot be added in the loan amount).
-Receipt of the signed and (if applicable) notarized and/or witnessed loan modification agreement
and any attachments
-Receipt of clear title, if applicable

Highlights of the enclosed Loan Modification Agreement and instructions for completing and returning it
are as follows:

- The amount of $0.00 (for items owed that cannot be included in the loan amount) is due in our office
  by October 22, 2013.
- The beginning interest rate is 4.000%.  If you are approved for a step rate modification, the
  adjustment terms are listed in the Modification Agreement.
- This modification may incorporate principal deferment of $0.00 that will result in a principal
  payment that will be due when the term of your loan expires October 01, 2053 (Maturity Date).
- This type of modification may incorporate some forgiveness of principal and/or interest, resulting in
  a reduction of your New Principal Balance.  The amount of your principal forgiveness will be $0.00
  and interest will be $0.00.  **This may result in a tax consequence to you and we encourage you to
  contact a tax professional to discuss any questions you may have.**
- The first modified payment begins November 01, 2013.  To accept this offer you may return the
  modification agreement along with payment of **$795.27, which will be applied towards your first
  payment after the modification executes.  This amount is not your new regular payment, as an
  escrow analysis will be run upon receipt and execution of this offer.**
- **Modified Payment Amount**

  | | |
  |---|---|
  | Principal and Interest | $595.74 |
  | Escrow | $199.53 |
  | **Total Payment** | **$795.27** |

- **If executing an ink signature (paper), enclosed are multiple copies of the Modification
  Agreement; please retain one copy for your records and return all other original Modification
  Agreements.  You must sign and return the Modification Agreements to us in the enclosed,
  pre-paid envelope.  The signed Modification Agreement must be received in our office on or
  before October 22, 2013.  If the Modification Agreements have notary provisions at the end; do**

NOT sign the enclosed Loan Modification Agreements unless you are in the presence of a notary. These documents must be signed in the presence of a notary and (if applicable) other witnesses. All of the documents must be executed by all parties included in the document and the signatures must be exactly as the names are typed. If you do not send the Modification Agreements and $0.00 (for items owed that cannot be added in the loan amount) (if applicable) by the above due date, you must contact us if you still wish to have your loan modified.

- Any delays in receipt of Trial Period Plan payments, if applicable, may have increased the delinquent interest being capitalized, which would have impacted all the balances calculated within the proposed modification.
- If any modification closing costs are more than projected, the difference will be assessed to the account.
- All miscellaneous fees and costs - excluding late charges - may not have been included in the loan modification and will remain outstanding, which may include title and recording costs when applicable.
- We are required to report factual information to the credit reporting agencies. Upon completion of the modification, when we next report your loan to the credit agencies, we will report your loan as modified. If you fail to successfully complete the modification and your loan is not permanently modified, accurate reporting will continue including any adverse reporting.
- For loans with mortgage insurance, the mortgage insurance premium may be subject to change following permanent modification. Any change would be proportionate to the modified loan amount, including any deferred balance, and would be reflected in a future escrow analysis following permanent modification.
- It is expressly understood and agreed that the Borrower is responsible for all his/her attorneys' fees and costs in any foreclosure action that may be currently pending and subsequently dismissed as a result of this Agreement and that no claim therefore shall be subsequently made against Ocwen Loan Servicing, LLC.

Please note: All terms of the modification (including any adjustments if you are approved for a step rate modification) are detailed in the Modification Agreement. Please review the Modification Agreement in its entirety prior to signing.

The signed loan modification documents and $0.00 (for items owed that cannot be added in the loan amount) must be received in our office on or before October 22, 2013. Please return to:

Ocwen Loan Servicing, LLC
3700 J Street SW
Suite 222
Cedar Rapids, IA 52404

IMPORTANT! The loan modification will not be complete until we receive all properly executed documents and $0.00 (for items owed that cannot be added in the loan amount). If the modification is not completed we will continue to enforce our lien. If the conditions outlined above are not satisfied the modification will be withdrawn.

**AUTOMATIC PAYMENTS: We know how busy your life is; let us make it simpler!** Enclosed is the authorization form to enroll in the automatic payment deduction plan at no cost to you! Please complete and return the enrollment form and you will be notified when the deductions will begin. Take comfort in knowing your payments will be automatically deducted when they are due.

If you have any questions, please contact your Relationship Manager, VICKIE MOORE at

Copy

Identifier: ███████        Doc Type:LMOD

1-877-928-4622 extension 2368341 between the hours of 8:00 a.m. and 9:00 p.m. central standard time
Monday through Friday.  If your agent is not available, one of their team members will assist you.

Loan Modification Specialist
Enclosures

M006

**Note:** This is an attempt to collect a debt and any information obtained will be used for that purpose.

**Notice Regarding Bankruptcy:**  If you are currently involved in a bankruptcy proceeding or have been
discharged of your personal liability for the repayment of this debt, this notice is being provided for
informational purposes only and is not an attempt to collect a pre-petition or discharged debt.  Any action
taken by us is for the sole purpose of protecting our lien interest in your property and is not to recover any
amounts from you personally.  If you have surrendered your property during your bankruptcy case, please
disregard this notice.

**Note:** If you are currently in bankruptcy under Chapter 13, you should continue to make payments in
accordance with your Chapter 13 Plan and disregard this notice.

Identifier: █████████     Doc Type: LMOD

Investor Loan # ████████████
Custodian ID:  D1
This document was prepared by Ocwen Loan Servicing, LLC

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attention: Loss Mitigation
3700 J Street SW
Suite 555
Cedar Rapids, IA 52404

MIN#

_____[Space Above This Line For Recording Data]_____

# Non-HAMP Loan Modification Agreement

Loan Modification Agreement ("Agreement") made this October 14, 2013 between JAMIE CURRO ("Borrower") and Ocwen Loan Servicing, LLC, Lender/Servicer or Agent for Lender/Servicer, Mortgage Electronic Registration Systems, Inc. (Mortgagee) amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated March 23, 2007 and granted or assigned to Mortgage Electronic Registration Systems, Inc. as mortgagee of record (solely as nominee for Lender/Servicer or Agent for Lender/Servicer), MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O Box 2026, Flint, Michigan 48501-2026, (888) 679-MERS, and if applicable recorded on with Instrument Number  in Book  and/or Page Number  of the real property records of PHILADELPHIA County, PA and (2) that certain promissory note ("Note") dated March 23, 2007 in the original principal sum of ONE HUNDRED FIFTY THOUSAND DOLLARS AND ZERO CENTS ($150,000.00) executed by Borrower.  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 2822 S ALDER ST PHILADELPHIA PA 19148, which real property is more particularly described as follows:

**(Legal Description if Applicable for Recording Only)**

Borrower acknowledges that "Lender" is the legal holder and the owner, or agent/servicer for the legal holder and owner, of the Note and Security Instrument and further acknowledges that if "Lender" transfers the Note, as amended by this Agreement, the transferee shall be the "Lender" as defined in this Agreement.

- 4 -

Copy

Identifier: ███████        Doc Type:LMOD

Borrower has requested, and Lender has agreed, to extend or rearrange the time and manner of payment of the Note and to extend and carry forward the lien(s) on the Property whether or not created by the Security Instrument.

Now, therefore, in consideration of the mutual promises and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. Borrower acknowledges that as of the Effective Date, the amount payable under the Note and Security Instrument (New Principal Balance) is $142,544.45.

2. The Maturity Date is October 01, 2053.

3. Borrower hereby renews and extends such indebtedness and promises to pay jointly and severally to the order of Lender the Principal Balance, consisting of the amount(s) loaned to Borrower by Lender and any accrued but unpaid interest capitalized to date as applicable, along with any other amounts that may come due under the terms of the original Note and Security Instrument.

4. Interest will be charged on the unpaid, non-deferred, "New Principal Balance" until the non-deferred principal has been paid in full. Borrower promises to pay interest at the rate of 4.000% from October 01, 2013 until I payoff my loan at the time when I sell or transfer any interest in my home, refinance the loan, or when the last scheduled payment is due. The rate of interest I pay will change based upon Payment Schedule below.

5. Borrower promises to make monthly principal and interest payments of $595.74, beginning on November 01, 2013, and continuing thereafter on the same day of each succeeding month, according to the Payment Schedule below until all principal and interest is paid in full. Borrower will make such payments at 3451 Hammond Avenue, Waterloo, Iowa, 50702 or at such other place as Lender may require. The amounts indicated in this paragraph do not include any required escrow payments for items such as hazard insurance or property taxes; if such escrow payments are required the monthly payments will be higher and may change as the amounts required for escrow items change.

If Step Rate:

## PAYMENT SCHEDULE

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends On |
|---|---|---|---|---|---|---|
| 4.000% | October 01, 2013 | $595.74 | $199.53, may adjust periodically | $795.27, may adjust periodically | November 01, 2013 | October 01, 2053 |

6. If on October 01, 2053 (the "Maturity Date"), Borrower still owes any amounts under the Note and Security Instrument, including any "Deferred Principal Balance" as provided for in this Agreement, Borrower will pay these amounts in full on that date.

7. If "Lender" has not received the full amount of any monthly payment within the grace period provided for in the original Note or as otherwise provided for by law, Borrower will pay a late payment fee to "Lender" in an amount calculated based on the late charge percentage provided for in the original Note, or as otherwise provided for by law, and the monthly payment required under this Agreement, with a maximum as provided for in the Note, or otherwise provided by law. Borrower will pay this

Copy

Identifier: ███████        Doc Type:LMOD

late charge promptly, but only once on each late payment.  The late charge is not in lieu of any other remedy of Lender, including any default remedy.

8.  It is the intention of the parties that all liens and security interests described in the Security Instrument are hereby renewed and extended (if the Maturity Date of the original Note has been changed) until the indebtedness evidenced by the Note and this Agreement has been fully paid.  Lender and Borrower acknowledge and agree that such renewal, amendment, modification, rearrangement, or extension (if applicable) shall in no manner affect or impair the Note or liens and security interests securing same, the purpose of this Agreement being simply to modify, amend, rearrange, or extend (if applicable) the time and the manner of payment of the Note and indebtedness evidenced thereby, and to carry forward all liens and security interests securing the Note, which are expressly acknowledged by Borrower to be valid and subsisting, and in full force and effect so as to fully secure the payment of the Note.

9.  If all or any part of the Property or any interest in it is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.  If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.  For purposes of this paragraph, "interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is transfer of title by Borrower at a future date to a purchaser.

10.  As amended hereby, the provisions of the Note and Security Instrument shall continue in full force and effect, and the Borrower acknowledges and reaffirms Borrower's liability to Lender thereunder.  In the event of any inconsistency between this Agreement and the terms of the Note and Security Instrument, this Agreement shall govern.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement, including but not limited to, in the case of the Borrower, the obligation to pay items such as taxes, insurance premiums or escrow items, as applicable.  Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Instrument, and shall allow Lender to exercise all of its remedies set forth in said Security Instrument.

11.  Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto.  This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.

EACH OF THE BORROWER AND THE LENDER ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN.  THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.

Copy

Executed effective as of the day and year first above written.

10/31/13 _____ *Jamie Curro* _____
Date       JAMIE CURRO

_____   _____
Date

_____   _____
Date

_____   _____
Date


## BORROWER ACKNOWLEDGMENT

State of *New Jersey*
County of *Gloucester*

On this 31st day of October 2013, before me, the undersigned, a Notary Public in and for said county and state, personally appeared JAMIE CURRO, personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public
My Commission Expires: 9/23/18

- 7 -

688429-000179

Copy

Identifier: ▮▮▮▮▮▮        Doc Type:LMOD

Mortgage Electronic Registration Systems, Inc- Nominee for Lender

By: _____
         Authorized Officer -Lender-

By: _____
Mortgage Electronic Registration Systems, Inc.- Mortgagee
Assistant Vice President

Date: _____

## LENDER ACKNOWLEDGMENT

State of IOWA
County of _____

On this __ day of _____, _____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____, personally known to me or identified to my satisfaction to be the person who executed the within instrument as Assistant Vice President of Mortgage Electronic Registration Systems, Inc- Nominee for Lender and Authorized Officer for Lender, said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public
My Commission Expires: _____

# PENNSYLVANIA

PREPARED BY & WHEN RECORDED RETURN TO:
*SECURITY CONNECTIONS INC.*
*240 TECHNOLOGY DRIVE*
*IDAHO FALLS, ID 83401*
*PH:(208)528-9895*
*ATT: TERRILL NIELSON*
COUNTY *PHILADELPHIA*
PARCEL NO.
POOL NO.
LOAN NO. ███████████

| | |
|---|---|
| **Page: 1 of 3** | |
| 09/18/2012 02:57PM | |

This Document Recorded          Doc Id: 52536097
09/18/2012                      Receipt #: 1157030
02:57PM                         Rec Fee: 198.00
Doc Code: A     Commissioner of Records, City of Philadelphia

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS, that *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN BROKERS CONDUIT ITS SUCCESSORS AND ASSIGNS,*

located at *1901 E Voorhees St. Ste C, Danville, IL 61834 OR P.O. Box 2026, Flint, MI 48501-2026*
(Assignor), for and in consideration of the sum of ONE DOLLAR ($1.00)
lawful money of the United States of America, together with other good and valuable consideration, to it in hand paid by *Homeward Residential, Inc.*

located at *1525 S. Beltline Rd.  Coppell, TX 75019*
(Assignee), at or before the delivery of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold, assigned, transferred, conveyed and set over unto said Assignee, its successors and assigns, all of its right, title and interest in and to that certain Mortgage dated the *23rd* day of *MARCH* , *2007*
made in the principal sum of *150,000.00* and executed by
*JAMIE CURRO AND RICHARD CURRO*
, Mortgagor, to *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN BROKERS CONDUIT ITS SUCCESSORS AND ASSIGNS*
,
Mortgagee, covering premises situated in the County of *PHILADELPHIA* ,
Commonwealth of Pennsylvania, more particularly described therein and commonly known as:
*CITY        OF        PHILADELPHIA*
*PROPERTY ADDRESS:    2822 S ALDER ST PHILADELPHIA, PA 19148*

Said Mortgage was duly recorded on the *10th* day of *MAY* , *2007* in the
office of the Register, Clerk of Recorder of Deeds of *PHILADELPHIA* County, in Book
at Page or Document No. *51691272* of
the Official Records of said Register Clerk of Recorder of Deeds.

███████████      *MIN* ███████████  *MERS PHONE: 1-888-679-6377*
*J=am8040112ai.s.04359*

Loan No.     Page 1 of 2

Loan No. ▮▮▮▮▮▮▮▮▮▮

TO HAVE AND TO HOLD the same unto said Assignee, its successors and assigns to its and their
proper use and benefit forever.

***SEE ATTACHMENT A***

IN WITNESS WHEREOF, the said *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS
NOMINEE FOR AMERICAN BROKERS CONDUIT ITS SUCCESSORS AND ASSIGNS*

has caused these presents to be duly executed by its proper officer this *18th* _____ day of
*JULY 2012* _____.

          MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

                              BY *VICKIE SORG*
                                 *VICE PRESIDENT*

STATE OF *IDAHO* _____              COUNTY OF *BONNEVILLE* _____
On *JULY 18, 2012* _____, before me, *MISTYLIN HANSEN* _____, personally
appeared *VICKIE SORG* _____ and _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons
who execute the within instrument as *VICE PRESIDENT* _____ and
                                                                                    on
behalf of *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN
BROKERS CONDUIT ITS SUCCESSORS AND ASSIGNS*

and acknowledged to me that the Corporation executed it.

*MISTYLIN HANSEN    (COMMISSION EXP. 05-31-18)*
Notary Public

```
┌─────────────────────────────┐
│     MISTYLIN HANSEN          │
│     NOTARY PUBLIC            │
│     STATE OF IDAHO           │
└─────────────────────────────┘
```

I DO HEREBY CERTIFY THAT THE PRECISE ADDRESS OF THE ASSIGNEE RESIDENCE IS:

_*1525 S. Beltline Rd.  Coppell, TX 75019*_

*VICKIE SORG*
*VICE PRESIDENT*

                              *SECURITY CONNECTIONS INC.*
                              *240 TECHNOLOGY DRIVE*
                              *IDAHO FALLS, ID 83401*
                              *PH:(208)528-9895*

*MIN* ▮▮▮▮▮▮▮▮            *MERS PHONE: 1-888-679-6377*
          *J=am8040112ai.s.04359*    Page 2 of 2

2822 S ALDER ST

Loan #  ▮▮▮▮
Order #
Name  JAMIE CURRO

# **Exhibit A**

### **Legal Description**

Situated in the County of Philadelphia, and the State of Pennsylvania, to-wit:

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the West side of Alder Street at the distance of one hundred and ninety-eight feet six inches Southward from the South side of Johnston Street in the Thirty-ninth Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said Alder Street fourteen feet three inches and extending of that width in length or depth Westward between parallel lines at right angles to the said Alder Street sixty feet to the middle of a certain three feet wide alley leading Southward into Bigler Street and Northward into another three feet wide alley leading Eastward into Alder Street.

TOGETHER WITH the free and common use, right, liberty and privilege of the aforesaid alleys as and for passageways and watercourses at all times hereafter, forever.

Tax ID No. ▮▮▮▮▮

For informational purposes only - property also known as:
2822 S Alder ST.
Philadelphia, PA 19148

When Recorded Return To:
DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

**CORPORATE ASSIGNMENT OF MORTGAGE**

**Philadelphia, Pennsylvania**
**SELLER'S SERVICING #:** █████████████

Date of Assignment: January 30th, 2017

Assignor: HOMEWARD RESIDENTIAL, INC., BY NATIONSTAR MORTGAGE LLC IT'S ATTORNEY-IN-FACT
Assignee: NATIONSTAR MORTGAGE LLC

I hereby certify the precise address of the within named Assignor is 8950 CYPRESS WATERS BLVD, COPPELL, TX  75019.

I hereby certify the precise address of the within named Assignee is 8950 CYPRESS WATERS BLVD., COPPELL, TX  75019.

Executed By: JAMIE CURRO AND RICHARD CURRO  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICAN BROKERS CONDUIT
Date of Mortgage:  03/23/2007 Recorded:  05/10/2007  as Instrument/Document: 51691272  In the County of Philadelphia, State of Pennsylvania.
Property Address: 2822 S ALDER STREET, PHILADELPHIA, PA  19148 in the City of Philadelphia
Legal:  See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

I do certify that the precise address of NATIONSTAR MORTGAGE LLC is 8950 CYPRESS WATERS BLVD., COPPELL, TX  75019
Attested By: _____
                              Mohamed Hameed

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $150,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

HOMEWARD RESIDENTIAL, INC., BY NATIONSTAR MORTGAGE LLC IT'S ATTORNEY-IN-FACT
On <u>January 30th, 2017</u>

By:
MOHAMED HAMEED, Assistant
Secretary

STATE OF Texas
COUNTY OF Dallas

On January 30th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State
of Texas, personally appeared MOHAMED HAMEED, Assistant Secretary of HOMEWARD
RESIDENTIAL, INC., BY NATIONSTAR MORTGAGE LLC IT'S ATTORNEY-IN-FACT, personally
known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019  #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)